Good morning. My name is Pierce Gore. I represent appellants Alex Kossin and Adam Victor. I'd like to reserve three minutes for rebuttal. May it please the Court. Davidson v. Kimberly-Clark provides us with binding guidance in three ways. First, Davidson defines the injury that gives rise to Article III standing to seek injunctive relief. When a consumer is unable to rely in the future upon a representation made upon a label, even if the consumer knows that the representation was false in the past, this is an ongoing injury. But the consumer in Davidson said that she was going to buy the product again, and your client said they were not. Mr. Kossin and Mr. Victor both said that they would consider buying Bigelow Tea in the future if the Court entered the injunction that both of them were seeking. But it seems to me the really difficult part is that the — this is a challenge to the label, not to the fact that the product doesn't have the supposedly helpful material in it, right? It's — It's a challenge to the label. It's both. It's both. The FDA — antioxidants became a powerful marketing buzzword about 10 or 12 years ago, but the FDA recognizes that there's nothing in tea that delivers any antioxidant benefits. Right. So it's a challenge to the label that says that there is. That's right. All right. So then they take this off the label, and the guy says he won't buy it anyway. Correct. So his problem isn't the label. His — it isn't that he can't believe the label because the label isn't — I understand. I'm not talking mootness. But in terms of whether he would buy it without the label, he said no. Right. All right. So, therefore, his problem — how can it be that he is challenging the — which is, I can't buy it with the label because I can't believe the label. Having — in fact, the label — it could be that they could have fixed the product in Davidson, but he still couldn't believe the label. Right? But here, there is no label at this time, and he still won't buy it. So why isn't that just too imminent? Well, for two reasons. One, Rule 23 imposes stringent duties on class representatives. One of those duties is to do whatever is in the best interest of the class, regardless of the plaintiff's personal beliefs about the label, the presence of it or the absence of it. And pursuant to that duty, a class rep would never abandon a claim that would benefit the class, especially a claim for injunctive relief. Well, that — I mean, it makes perfect sense, but it isn't the way the law is set up, as I understand it. In other words, the law is set up so that we're not looking — there was no class at this point. The class was denied. Right? Right. So at the point that all this is happening, it's him and him alone. Well, he's still seeking to become a class rep. But are you saying that he's lying? I mean, I'm very confused by your answer that he's strategically answering the questions to be a good class rep, because he has to tell the truth, right? And he has to show he has standing. So he can't not tell the truth about whether he's going to buy this product or not in order to try to be a better class rep. No. He is telling the truth, and he wants to buy the product in the future. He enjoys the product, and he's willing to return to buying the product. But he wants an injunction in place because Bigelow's label change was purely voluntary. Bigelow has never admitted — Did he ever say that he enjoyed the product? I mean, that's really the fundamental question here. He clearly made a representation. In fact, you can read it. I feel lied to. This is Victor. I feel lied to. How can I trust the company? He's clearly expressing what is consistent with the Davidson case. That's fear of an inaccurate, invalid label. But at the same time, he's also really reluctant to say that he would ever be interested in buying the product back. And isn't that essentially a problem? Both Carson and Victor testified that they would consider buying Bigelow Tea in the future. Well, one of them said no and then came back after the break and said, well, I'd consider it. But the clear — the clear assertions were that they were not really interested in buying the product in the future. Well, their testimony, which appears in the record, is that they would consider buying it again. But they're both actively seeking an injunction. But this is what I don't understand. Since, in fact, it isn't moot, if the — because it was a voluntary cessation, they could have gotten the injunction if they were entitled to the injunction, even if they would have bought the product without the label. But they still wouldn't buy the product without the label when it existed because they said, I don't trust these people. But what aren't they trusting when there's no label? I mean, the whole thing becomes a huge circle. It does become a circle because without an injunction, Bigelow is free to put antioxidant labeling back on the package. Correct. But in the meanwhile, there's no label. Right? But other class members don't know what these plaintiffs now know. And they're trying to do what's — Well, what's the difference? There's no label right now. Right now. And as you say, the case wouldn't be moot because it was a voluntary cessation. So in terms of getting the injunction, it has nothing to do with getting the injunction, whether they would buy it in the meanwhile without the label, but they wouldn't buy it without the label. That's pretty good evidence that they're not interested in the label. They're interested in buying the tea. They want to make sure that it's truthfully and lawfully labeled. And the only way to guarantee that — Okay. Well, it was at that point, right? At the point that they weren't buying it, it was. It was labeled with antioxidant labels. And then they took off the label. That happened after we filed our complaint. Well, I understand it. But they said, will you buy it now without the label? No, I won't. They aren't willing to buy it unless there's an injunction in place to protect them and other class members. But that suggests that this is not about whether they're going to buy the tea. With the label. It's not about the label. They don't care about the label. I mean, that suggests that they're trying to somehow manufacture standing in order to be a class rep. And you can't do that. You have to actually have an injury, and you have to be able to testify honestly to it. There's no need for them to manufacture standing. Under Davidson, the moment a consumer is unable to rely on a representation on a label, that's enough for standing. Before a lawsuit is ever filed. And that injury is ongoing. And that injury is, as Judge Berzon points out, it's not a mistake. Well, as you can tell from my concurrence in Davidson, I don't understand any of this because I don't see why this isn't a remedy and not a standing question. But that seems to be the law at this point. And if it is the law, since it is the law at this point, it seems to me that the injury you're alleging is not the same injury that we found adequate in Davidson. We would submit that Davidson defines an ongoing injury. If someone is unable to rely on a label, whether the label has been voluntarily changed or not, the case or controversy at that point is not moved. In the context of the UCL claim, didn't your clients say they weren't relying on the label anyway? It was all about this technical FDA violation. And that's why they didn't have to show reliance under the UCL because it's not that type of claim? It's both. They liked the antioxidant labeling while they were buying Bigelow tea. And then they found out that there's nothing truthful about it. But they claim that they didn't have to show reliance because they're not really claiming that. They're claiming this other kind of technical violation. So I'm not sure how you can have it both ways. I believe they testified that they read the label, they relied on the label, and then they found out that the label was untruthful and unlawful. Well, you could have standing on the ground that it was – that they relied on it and it wasn't truthful and then, I mean, challenge it on the legality ground. I mean, that happens fairly often, i.e., your injury doesn't have to be exactly the same as your legal grounds. That's right. But even under Davidson, if the person looks at the label and discounts the label, is afraid of the label, feels it's going to be inaccurate, even the court in Davidson suggested that that was not enough because they essentially said this is a close question. And it's clearly established in Davidson that Davidson did not give full credit to the label. That still remains a close question, which suggests that our responsibility is then to look at the individual facts to see if really above and beyond the fear of the accuracy of the label, there is some other aspect of the harm. Well, that's right. In Davidson, the court ruled that we're standing as premised on the threat of future injury. I'm quoting, we must not employ too narrow or technical an approach in assessing standing. And I submit to you that when a consumer discovers that they can't rely on a label and they file a class action seeking public injunctive relief, that it is perfectly appropriate for that consumer to seek an injunction at every stage of the proceedings, class or no class, because they don't know how the case is going to turn out. Well, that's all perfectly true. That's why I have a problem with what you're saying, because they could get the injunction even if they had, my understanding is if they had said, sure, now that there's no label, I'm going to buy this tea, but I still want my injunction. That would have been fine, right? Because what I want is an assurance that that injunction, that that label, the untruthful label isn't going to come back because I want to keep buying it. That would have been a coherent position. At the time these plaintiffs filed their lawsuits in 2012 and at the time they gave their depositions in 2015, as the court pointed out in Davidson, the courts of the Northern District were all over the map on what a consumer had to plead and prove. You're saying again that they're crafting their testimony in order to fit the law. They're obligated to tell the truth. And what they said, which we have to assume is true, is they're not buying the product even without a label. I don't think there's any suggestion or evidence in the record that these plaintiffs didn't testify. So why are you telling us that the Northern District cases were a mess? I'm telling you that because it was unclear at the time to these plaintiffs and to counsel exactly how to proceed. So these plaintiffs testified truthfully. But isn't that a way of saying it was unclear to us what we should say to have standing to proceed with this case? And the answer to that is you should tell the truth. And they did. So then they have told the truth, that they don't buy this product without a label, and that defeats their claim of injury, doesn't it? No, it doesn't defeat their claim of injury because under Davidson, their injury is ongoing until redressed. The controversy is not moot. It has to be imminent. And it's not imminent because they've said they're not buying the product anymore. It's imminent because Bigelow could return to its unlawful labels at any time. There's no legal prohibition on Bigelow doing so. But they have said we're not going to keep buying this product. We're not buying this product. That's different than the person in Davidson. They said we're not buying a product until we have an injunction, which means there's nothing imminent here because they're not buying the product. Well, Davidson was resolved on the pleadings. This case was resolved on summary judgment. We have a more fully developed record. And these plaintiffs testified truthfully that they are consistently seeking an injunction, that they don't trust the label, that they can't rely on it. And, yes, they stopped buying the product. Kagan. The theory of the defendant in Davidson was that because the label is, was untruthful, these people should know it's untruthful, and therefore they can't be fooled anymore. One response to that is, well, how do we know it continues to be untruthful? You might have fixed the product in the meanwhile. The problem, right, in other words, as long as you still have this label on there, we can't know what we're buying because, you know, in the past it was not a flushable wipe, and now it might be a flushable wipe, but we don't know what's with this label. But once you take the label off, I just don't, and where the objection is to the label. I mean, this is where I started by saying the only way your position makes sense is if your objection is really to the fact that there's no antioxidants in this tea, rather than to a truthful label. Then you could say, well, I don't want to buy this because I want some antioxidants, and I'm not going to buy it until they put in some antioxidants. But that's not what the case is about. Well, the case is about the label. The label concerns antioxidants. Food companies change their labels all the time for lots of reasons, and there's nothing in our record that would prevent Bigelow from returning to its old labels or some different version of the antioxidant labeling. Your time is up if you want. Your time is nearly up. I'm interested to know what exactly the injunction would say. Would the injunction say you cannot put antioxidants on the label? Is that what you're seeking? In which case, what's the difference between ripping off the antioxidants and the injunction that you seek? I would expect that the injunction would track the language of the FDA regulation, and it would prohibit any reference to antioxidants that violate the federal regulations. I think it would look like that. Okay. Thank you. We'll give you a minute and 15, 14 seconds, Mr. Revital. Thank you so much. Thank you. Good morning, Your Honors. Matt Kleiner on behalf of R.C. Bigelow. This Court should affirm summary judgment in both the case and victor matters because there is no evidence of concrete, certainly impending, and unconditional future harm. As the United States Supreme Court held in Lujan, standing is not an ingenious exercise in the conceivable, but instead at the summary judgment stage, it requires a factual showing of perceptible harm. So it requires the plaintiffs to submit evidence that they are likely to be harmed in the future, rising above mere speculation and vague desires about possible purchases that may occur sometime in the future. Turning to Davidson, Davidson is distinguishable from the facts in this case, and as counsel pointed out, this case is on a summary judgment. Davidson was from the pleading stage. And Davidson made it very clear that there is no evidence in that record that discounted plaintiffs' stated intent to purchase the products in question. In Davidson, the Court talked about this imminent and certainly impending harm, which was the inability of the consumer to tell whether or not the label was true or false. So in my mind, I picture Ms. Davidson going to the store, and she testified or she put into her pleadings that she desired to purchase the product. So she goes to the store, and she talks about that she does that often. Every time she goes to the store, she has to run through this mental exercise of, does this label mean what it actually says? And every time she does that, there's this alleged ongoing injury. When you compare that to the real injury, the future injury, which justifies injunctive relief, is essentially that you cannot trust the label. And as a result, what the plaintiff is seeking to do is get an injunction to make sure that they can respect the label in the future. So the harm is defined as fear of an inaccurate label. Or is that not right? I agree with that, Your Honor. But when you compare it to the testimony here by Mr. Case and Mr. Victor, when those two plaintiffs go to the store, they see the Bigelow Tea products on the shelf. They know that they can't trust that label. Well, all right. So they know they can't trust. And therefore, if they had not said they wouldn't buy it during the period when there was no antioxidant, suppose they had said, yes, we're buying it now, but we still want an injunction because they may go and put this thing back on again, and then we're not going to know if it's true or not. Would that be okay? My point ultimately goes to they Yes or no? Would they have standing then? I think that they would have standing if they go to the store and they said, I desire to purchase this product. I can't understand what the label says. And they meet the qualifications of Davidson, then, yes, they would have standing. But that's Davidson's definition is not just the label itself, but actually, in addition, you have to show that there's not likely to be a purchase in the future. Correct. Davidson requires, in addition to it, a desire to purchase the products in the future, but this fundamental misunderstanding that you can't trust the label. So justification for standing is not simply, I don't trust the label, I need protection to make sure that the label is going to be accurate in the future by seeking an injunctive relief. That doesn't establish future harm for purposes of an injunction. You need more than that. Is that what you're saying Davidson says? That's correct, Your Honor. Because when Mr. Victor goes into the store to purchase this product, he's not looking at the label to determine whether or not it's compliant with the FDA regulations. What he is now looking at is, do I have an injunction? He's not going to purchase that product no matter what the label says. And he specifically testified that, and that's how we are different from Davidson. He specifically testified that I do not trust this company. I don't trust this brand. I'm not going to buy it in the future. I don't care what the labels say. I'm not buying it. The only way that I'll buy this product is if I have an injunction. Now, what the terms of that injunction are, what they may be, is all up to a third-party court. So there is no mental wrangling there like there is with Davidson who goes into the product and says, I really want flushable wipes. Maybe these wipes are compliant. These plaintiffs have testified very clearly that when they go into the store, they're not buying that product. They have no desire to purchase this product in the future unless and until there's an injunction. And that's a contingency that may or may not happen in the future. The reason why all of this is so disturbing is because this is all under California law. And we know, particularly after McGill, that under California law, if they were in California court, they'd get the injunction. Is that right? I don't know, under the facts of this case, if they'd be able to establish standing based on the fact that there's no harm and no injury. You mean UCL standing, though? Correct, UCL standing. But I thought that the understanding under California law is that the primary remedy is an injunction. As long as they were injured at least once. At least once they say they wanted to buy this and they bought it, but the label was inaccurate. So they would appear to be, under California law, able to get a restitution at least for that one purchase and an injunction, because they don't have to show anything more in California to get the injunction. I would agree with everything you said, except for the fact that in this case, the district court has already determined that there is no ability of these plaintiffs  So they can't get restitution. Why is that? They were, on both the order denying class cert and also on the order for motion for summary judgment, the grounds there was that the plaintiff is unable to prove damages. And there were several But why is that? They bought a product that they claim was mislabeled because of its label. So why can't they get damages? They were unable to put forth any theory that was acceptable within which to prove damages. And the theories that were put forth by plaintiffs was that the product was legally worthless. So their damages were the difference between what they paid and zero. And the courts have held that that is not a viable remedy. And so that was the remedy. They also presented a statutory and a nominal damages claim, both of which were rejected by the court. But in Davidson, they did have, as my understanding is, they did either get or establish standing for restitution. So I don't see the difference. Well, in Davidson, they allege that they had damages, which is different than here because now we're at the summary judgment stage. And they were required to produce evidence. But I understand for California law, it actually doesn't much matter. And this case wouldn't be different in any event. So this insistence on what's really, you know, angels dancing on heads of pens in terms of what their interest in future buying of the product is, is disturbing because it all depends. I mean, if this was a California company and there wasn't diversity, the whole outcome would be different because they'd be in California court. I disagree. And the reason I disagree is because all that is currently pled and the only thing that is moving forward as of today is a claim for injunctive relief under the UCL. There is no class action. Class has been denied. Plaintiffs have waived the opportunity to challenge the class action. There are no damages. So you say there was no economic damages, you're saying? There's no economic damages. I understand that that's what was decided. I don't understand why. But that's okay. But at least as to the general principle that in State court, they would be able to proceed on injunctive relief requests. But when you then remove it to Federal court, immediately the question about injunctive relief becomes in dispute. And in fact, under your theory, they can't go forward on injunctive relief. So essentially, doesn't that suggest a great forum shopping concern? That would all be true had this case been removed by defense counsel. This case was originally filed in Federal court by the plaintiffs. I understand that. But just more conceptual. Isn't it also true that if there's no standing in Federal court, then there's no case in State court and you can't remove it even if you try to because there's no jurisdiction in Federal court. So it gets litigated in State court. Isn't that? Absolutely correct. Is that true? Had this case been filed as it's currently procedurally styled, there would be no way for the defense to remove this case to Federal court. It's based on injunction. There's no damages. So you don't have diversity jurisdiction of the 75,000 amount controversy. And you also don't have jurisdiction under the Class Action Fairness Act. So this case could have and probably should have been brought by plaintiffs in State court and there's nothing that defense could have done to remove the case to Federal court to take advantage of the Article III standing. And that's true of any case that needs to be removed, that you tried to remove to Federal court because part of removal is saying there's jurisdiction in Federal court, right? So you get sent back if there isn't. Correct, Your Honor. I don't think you do get sent back, actually. But go ahead. So I'd like to focus on Mr. Costin's case and with respect to the specific evidence that he presented there. He testified that he would consider. So, again, we don't have a definitive intent to purchase in the future. It's just he might do so under three conditions. One, you have an injunction. Two, he has to receive reasonable assurances that the product was in compliance with California law. And number three, compensation. He requires compensation for the harm that has been sustained by purchasing this product. As we talked about, these three conditions really create a chain of speculation or a chain of speculative possibilities that may or may not occur in the future. Moreover, he hasn't even testified that he would or he will purchase the products if these three conditions even take place. So it's this speculative, vague desire to purchase the products someday in the future, which has been held by the United States Supreme Court to be insufficient. But I'd like to focus on the compensation aspect of this, too. The compensation part was never presented to the district court. That testimony was dug out on appeal and presented for the first time on the appeal. I'm sorry. What compensation part? The testimony that Mr. Cosson would purchase the product if he was compensated for the harm. That testimony was not presented to the district court. It was presented on appeal. It was part of the record before the district court. I thought it was he wouldn't buy it unless he had an injunction. Yes. He needs an injunction, compensation, and reasonable assurances. So when you look at all the testimony that he provided, whether it was in his declaration or in his deposition testimony, those are the three things that came out of that. But he wants compensation before he ever would buy the product in the future. Exactly, Your Honor. And he can't get compensation because the district court has already decided there's no damages. And more importantly, in this appeal, he didn't raise damages or that there was an error with that finding. I read somewhere that Mr. Cosson was, in fact, using Twinnings. I think it was Twinnings tea, which, of course, has an antioxidant label. That's correct, Your Honor. Is that correct? Yes, Your Honor. An antioxidant label which was fairly consistent with the label that's in dispute here? Yes, Your Honor. And the Twinnings appeal is currently stayed pending this oral argument. So that's been fully briefed as well. So Mr. Cosson has established that there is no possibility by which he's going to purchase these products that would satisfy the Article III standing. As to Mr. Victor, Mr. Victor specifically said, I have no plans to purchase these products in the future. And he supported that with rationale that he doesn't trust the company and he feels like he's been lied to. I thought he said that and then there was a break and then he came back and said, well, I would if there was injunctive relief. I would buy it. I would consider buying it if there was injunctive relief. Absolutely correct, Your Honor. After a break, he came back and then basically provided testimony that was inconsistent with what he had provided before. Now, there's nothing wrong with the district court looking at testimony that is inconsistent by the same party and disregarding the testimony where he comes back and changes the testimony, unless, of course, there was some explanation for why he changed the testimony. And here there is no explanation given. Moreover, it doesn't make any sense because Mr. Victor also testified that he would not purchase the Bigelow Tea products even if they changed the label. So even if he gets that injunction, which presumably is going to prevent Bigelow from changing the label, he was shown that Bigelow in this case actually changed the label and he's still not purchasing the product. So this contradictory testimony is appropriately disregarded by the district court in granting summary judgment. And with that, unless the Court has any further questions for me, I thank you for the discussion. Thank you very much. And the attorney submits. Roberts. Respectfully, Your Honors, Davidson changed the definition of Article III standing to seek injunctive relief in the Ninth Circuit. As Judge Berzon has pointed out, there's no Article III requirement in State court. These plaintiffs could seek an injunction. They have to show economic damages. The question is whether they did. I mean, apparently it was held. You didn't appeal the ruling that they didn't show economic damages. That's correct. That's correct. There were a number of appeals ongoing at the time, and these plaintiffs' theory of economic damages has now been decided against by the Ninth Circuit in Brazil v. Dole, and that's why they weren't pursuing economic damages at the time. But Davidson provides a definition for standing that takes place before a plaintiff ever goes into court. These plaintiffs, Cossin and Victor, had standing at the moment in time that they became unable to rely on Bigelow's labels. I'm confused about — so in your section of your brief about the reasonable consumer test, you talk about how his claim requires no proof of deception. So it seems like you're saying you don't actually have to have evidence that he was deceived? I'm really confused about your theory here of how he was harmed. I'm sorry? No, that's the question. All fraud-based claims, of course, require proof of deception, but the Ninth Circuit recently ruled in Bruton v. Gerber that because there is no reliance element in the federal — in the FDCA, the Sherman Law, the underlying regulations, that there's no proof of deception required under the unlawful prong claim under the UCL. But they still have to prove for standing that they were injured. Yes. So how were they injured? They were injured under Davidson at the moment while the label was still on there when they became unable to rely on the label. So reliance is a factor. Yes. But I think you're backing away from the idea that they did rely or that you're claiming that they relied on the label ever. They relied on it until they found out that it was false and unlawful. So what you're saying is that there is a reliance element, but there's not a reasonable consumer element? It could be an unreasonable consumer as long as they're relying. I think for purposes — For standing purposes. For purposes of standing. For standing purposes, yes. I think Davidson cautions against an overly technical approach to standing. Yeah, but this is something different. What Judge Friendlin was asking you about was whether this particular cause of action with regard to the technical requirements of the FDA for this kind of a label. Yes. For that purpose, you say you don't have to be a — there's no reasonable consumer standing. But for standing purposes, you have — don't you have to be a reasonable consumer in order to be injured? Well, I think that a — I don't think that you would look at a consumer's reasonableness if that consumer were seeking an injunction under the unlawful prong of the UCL. At that point — But they certainly can claim — I mean, presumably they didn't know anything about these requirements at the time they were buying this stuff. I think that's right. So they weren't relying on the fact that it met all of these technical requirements. They were relying on the fact or they were concerned about the fact that it said antioxidants, that's why they bought it and they didn't have them. So for standing purposes, I think you need to go back to the essentially a reasonable consumer-like standard, don't you? We would submit that every reasonable consumer who walks into a supermarket believes and relies on every label, on every food product in the store, assuming that it has been vetted by the FDA. Okay. All right. Thank you very much for your arguments. Thank you. The Victor and Kasson v. Figalo cases are submitted. We'll go to Durnford v. Muscle Farm Corp.
judges: Berzon, Friedland, Sessions